Thomas M. HIGGINS, as he is Mayor of the City of Woburn, Massachusetts, Plaintiff,

v.

UNITED STATES POSTAL SERVICE and William Bolger, Individually and as Postmaster General, Defendants.

Civ. A. No. 78–783–MA.

United States District Court, D. Massachusetts.

May 5, 1978.

Carol J. Muller, City Solicitor, Woburn, Mass., for plaintiff.

Carolyn Grace, Asst. U. S. Atty., Boston, Mass., for defendant.

OPINION

MAZZONE, District Judge.

The complaint in this case was filed on April 7, 1978. The plaintiff's application for a Temporary Restraining Order was heard on the same day and denied. On May 3, 1978 the matter came forward for hearing on plaintiff's motion for preliminary injunction. The Court ordered the trial of the action on the merits to be advanced and consolidated with the hearing of the motion pursuant to Rule 65(a)(2), F.R.Civ.P.

The complaint seeks to prevent the construction of a General Mail Facility (GMF) of the United States Postal Service in Woburn, Massachusetts because of the failure of the defendants to obtain a formal Environmental Impact Statement (EIS) required by the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq. (NEPA). The defendants contend that the EIS was not required because of a determination pursuant to Postal Service rules and regulations that the construction of this facility was not a major federal action "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C), 39 C.F.R. §§ 775.4, 775.5.

The GMF is a mechanized mail processing facility designed to expedite delivery of mail at lower costs. This GMF services the communities surrounding the City of Woburn. In August, 1975, the Postal Service notified the Woburn city officials of the intended site of the GMF and asked for comments. The response from the Mayor at that time was limited to the effect the facility would have on the city's tax rolls. From that point on, there was continuous contact between the Postal Service and the city and state officials concerned, particularly the Office of State Planning and Management (OSPM), concerning the site and the construction of the GMF.[1] Further

---

1. OSPM is an "A–95 Clearinghouse." The clearinghouse is designed to to coordinate federal projects with state, area, and local programs.

meetings were held, and a public hearing took place before the City Council. In October, 1976 an architectural and engineering contract was awarded, and duly reported in the *Woburn Daily Times* on October 25, 1976.

On March 1, 1977 the Postal Service retained Metcalf & Eddy, Inc., Engineers and Planners, to prepare an Environmental Assessment Report (EAR) pursuant to Postal Service regulation 39 C.F.R. 775 et seq. The EAR was required to determine whether the GMF was a "major federal action significantly affecting the human environment." The EAR was submitted in July, 1977. On the basis of that report, the Postal Service issued the negative declaration that the proposed action was not a major federal action significantly affecting the human environment, and declared that a formal EIS was not required for the project. Notice of this negative declaration was sent to OSPM and to the Metropolitan Area Planning Council (MAPC)[2] on August 11, 1977. On November 14, 1977 construction bids were issued and advertised. Bids were opened on January 31, 1978. On March 21, 1978 the Postal Service requested a meeting with the city officials and informed them that the contract for construction was to be awarded no later than March 24, 1978. On March 24, the contracts were executed and on March 30, the contractor occupied the site and began work. The construction was scheduled for completion within 14 months. By April 7, 1978, the date of the hearing on the Temporary Restraining Order, the site had been marked, heavy equipment was present and excavation had begun. At the time of this hearing, a major part of the concrete footings had been poured, fill has been delivered to the site, and much of the electrical and mechanical components for the facility had been ordered.

The United States Postal Service is an "independent establishment of the executive branch" of the United States Government. 39 U.S.C. § 201. The Postal Service is exempted by statute from complying with certain federal laws, but it is the policy of the Postal Service to comply voluntarily with NEPA "to the extent practical and feasible consistent with the public interest and fulfillment of the primary mission of the Postal Service." 39 C.F.R. § 775.1(b); 39 U.S.C. § 410(a). The Postal Service has adopted regulations, found at Part 775 of 39 C.F.R., by which it implements such compliance. NEPA requires "all agencies of the Federal Government" to include in "major Federal actions significantly affecting the quality of the human environment" a detailed statement, called here an EIS. 42 U.S.C. § 4332(2)(C). The regulations direct the responsible officials through a step-by-step determination whether a proposed action by the Postal Service is a major action, and whether such action significantly affects the quality of the human environment. 39 C.F.R. § 775.3(a). Should the Postal Service determine, based on an environmental assessment, that the major action does not have the requisite effect on the quality of the human environment, a negative declaration is prepared. 39 C.F.R. § 775.5. A negative declaration "is a written description of a proposed action, its expected environmental impact, and the basis for the conclusion that no significant adverse impact on the environment is anticipated." 39 C.F.R. § 775.2(b). In this case the Postal Service complied with these regulations to determine that no further action under 42 U.S.C. § 4332(2)(C) would be necessary.[3]

Plaintiff asks the Court to review a determination of the Postal Service. He alleges that the conclusion of the EAR was arbitrary, so that the Postal Service's negative declaration based on the EAR is arbi-

---

**2.** MAPC is the state agency concerned with projects affecting the area involved in this case.

**3.** The preparation of a negative declaration implies a Postal Service conclusion that the pro-

posed action is not likely to be environmentally controversial. 39 C.F.R. § 775.4(a)(4). The Court finds such conclusion is not arbitrary. *Hanly v. Kleindienst,* 471 F.2d 823, 830 (1972).

trary and capricious. The EAR prepared by Metcalf & Eddy is a thorough consideration of "the extent to which the action will cause adverse environmental effects in excess of those created by existing uses in the area affected by it" and "the absolute quantitative adverse environmental effects of the action itself, including the cumulative harm that results from its contribution to existing adverse conditions or uses." *Hanly v. Kleindienst*, 471 F.2d 823 at 830, 831.

Areas of particular concern to plaintiff are impact on traffic, air quality, noise, and land use. Complaint ¶¶ 7, 8, 19–21. Each of these areas is considered closely in the EAR. In addition the report examines the geology and topography of the site, wildlife and vegetation affected, soil drainage capacity, hydrology and water quality, availability of utilities, changes in the socio-economic conditions of Woburn and other communities where Postal Service employees work, effect on delivery of postal services, discussion of alternative sites, projects, and possibilities for lessening any adverse impacts, however insignificant.

The EAR relied on current data gathered by the Metropolitan Boston Intrastate Air Quality Control Region for comparison with predicted impact by GMF as measured against the anticipated development of the industrial parks and current conditions. Impact of traffic by new employees at site and postal traffic of United States Postal Service and its customers were considered. EAR p. 2–7, 3–22. Noise effects were determined to be insignificant. A 1976 Massachusetts Department of Public Works study of the immediate area provided a basis for analysis. Scheduling of GMF trucks to lessen its contribution to noise is anticipated.

The report analyzed the impact on controlling water runoff, increased by creating the building and parking lot in place of a vacant field. Current storm drain capacity, augmented by GMF drainage engineering is expected to handle the increased runoff effectively. Proper grading is suggested to minimize the quantity of oil products entering the general drainage system which empties into the Aberjona River. EAR p. 3–9, et seq.

Argument of counsel dealt largely with traffic and land use impacts in addition to what counsel termed a lack of cooperation. As discussed in the EAR, these impacts are within control of careful planning. The EAR evaluated the traffic impact of the GMF on the roadway capacity and related it to current and projected land use (and expected traffic impact of future uses). Here the 1976 Massachusetts study provided information on current and projected traffic volumes on Mishawum Road and Washington Street, two routes providing the industrial parks and current shopping area access to Route 128. The expected traffic generated by Postal Service employees' private travel, customers, and postal vehicles would constitute three percent of the peak hour traffic in 1985 generally on these streets, and ten percent on the block of Washington Street between the GMF site and Mishawum Road. The particular impact on the residents of Richard Circle who use this part of Washington Street for access to Woburn south of Route 128 is recognized, and possible remedy is suggested. The data for peak hour traffic indicates the ratio of trucks to total traffic will be unaffected by the GMF. EAR p. 3–20.

The EAR stated that present roadway capacity is poor, inadequately meeting current needs. Without street widening and introduction of traffic signals, the roadways will continue to be congested as new traffic continues. The GMF will occupy about 10 acres of some 700 acres available for industrial use. The report indicates Postal Service impact on traffic would be equal to or less than that of any industrial use of the site. EAR p. 3–19. Plaintiff has introduced no data disputing the basis of these subsidiary findings of the EAR. The EAR points out that Woburn Public Works Department now plans improvements of one Mishawum intersection, at Commerce Way. The Postal Service has met with plaintiff to discuss the recommendations of the EAR for improving traffic conditions on Mishawum Road and Washington Street. The

EAR reflects attention to the Postal Service's standards set forth in 39 C.F.R. § 775.4(b)(c). This Court finds a reasonable basis for the Postal Service's negative declaration exists. Its determination was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See *Wilson v. Lynn*, 372 F.Supp. 934, 937 (1974).

A final comment about the communication between the Postal Service and the City of Woburn is appropriate:

"Where a proposed major federal action may affect the sensibilities of a neighborhood, the prudent course would be for the agency in charge, before making a threshold decisi n, to give notice to the community o. .ie contemplated action and to accept all pertinent information proffered by concerned citizens with respect to it. Furthermore, in line with the procedure usually followed in zoning disputes, particularly where emotions are likely to be aroused by fears, or rumors of misinformation, a public hearing serves the dual purpose of enabling the agency to obtain all relevant data and to satisfy the community that its views are being considered." *Hanly v. Kleindienst*, 471 F.2d at 835.

The record shows, and I so find, that the Postal Service undertook a sincere and effective course to inform the local officials of the progress of this project. The project has been under consideration since late 1974, and beginning in August, 1975, the Postal Service has been in contact with the responsible city offices, although the persons who occupied certain offices may have changed.

Further, the EAR demonstrates how future planning can improve traffic conditions in the industrial parks development which Woburn land use planners project. While a proper negative declaration precludes statutory and regulatory directions

for agency interaction with the neighborhood as in preparation of a full EIS, 42 U.S.C. § 4332(2)(c), meaningful dialogue should quiet disputes over opposed, though not "environmentally controversial," issues raised by the EAR. Both sides will benefit from continued communication about all aspects of the project.[4]

In accordance with the foregoing, the plaintiff is not entitled to the relief sought. The complaint is hereby dismissed and judgment entered.

---

4. Given the above, it is unnecessary for the Court to consider the further argument made by the defendant that the plaintiff's delay in bringing this action bars his claims for relief. It should be noted, however, that at this stage, any interruption or delay in the continuation of the project would cause great harm to the defendant and to the public which would outweigh any possible harm to the city.